At this time, would counsel for the appellant please introduce himself on the record to begin. Good morning to all. Attorney Edgar Sanchez-Mercado. I am the attorney for the appellant, Maximiliano Figaro-Benjamin. May it please the Court. Your Honors, I would like to reserve at least two minutes, if necessary, for our rebuttal, Your Honor. Yes, you may. Two minutes. Thank you very much. Your Honor, the district court's failure to give notice of the factual findings that it would rely upon at the sentencing hearing undercuts Figaro's opportunity to challenge and rebut the assertions, therefore, violating his Sixth Amendment rights. District Court urging relying upon inaccurate findings of drug quantities and role in the offense, which resulted in an improper determination of Figaro's guideline calculation. Counselor, I'm trying to drill down on what your argument is because the record suggests that you were given a copy of the transcript from the other hearing that the district court relied upon, and you also had the PSR, which had drug quantity and also leadership role. And so I'm not quite understanding the notice argument that you're making. The notice argument, Your Honor, is based on U.S. v. Burson, which addresses the issue that it's the court, not the probation office, not the transcript, Your Honor. It's the court, the district court, Judge Pesos, at this moment, that should uprise that something different, that what happened at the change of plea hearing, which was a straight plea, when the government stated that it was 132 kilograms of cocaine. Well, that was seized. It was seized. But the thing is that this was the day before the beginning of the trial, so the government already knew about whatever the government witness was going to present because he was debriefed way before it. We weren't at that trial. We didn't have the opportunity to cross-examine at that moment. We didn't have the opportunity to cross-examine regarding the role. And that's the thing that we brought into the judge at that moment. We didn't have proper notice from the court, not from the probation office, even though we objected to the PSR. We objected in our sentencing memorandum. However, we believe, Your Honor, that it was the duty of the court to give us proper notice that he was to take something different than what happened at the sentencing, the change of plea hearing, and he was going to use it against the defendant at this moment, Mr. Figaro. That would have given us a chance to either request a continuous of the sentencing hearing and maybe recall or call the cooperating witness from the government and have a chance to have him down at the witness seat and ask him and confront him, because no one confront him regarding the matter of my client, of Mr. Figaro. It was basically whatever happened there, some facts that are really unreliable. Well, once you realize that the court was going to use the testimony, I don't recall anything in the record about a request for a continuance to bring in. No, we didn't do it, Your Honor. Okay. No, we didn't do it. So what exactly is this notice that you say your client was entitled to? You wanted some notice from the judge, a notice from the judge that he was going, given the fact that he was also the trial judge, that in making a drug quantity determination, he might go beyond the drug quantity that was seized, having heard testimony that your client was involved in various importation activities, that he might rely upon that testimony to increase the drug quantity determination? You wanted some notice to that effect? There are two issues. One of them is that the drug quantity, but the other one is the role of the offense. Because of the role of the offense, he received a five-level upward points regarding his base offense level. But the PSR made that recommendation. Excuse me? The PSR made that recommendation. Yes, they did. And we objected to it. But you were on notice that that was the recommendation. We were on notice by the probation office. But it is something, if you compare it with the change of plea hearing, with the transcript of the change of plea hearing, it clearly states, the government states, that it's 132 kilograms seized, and at no point in time, they referred to the role of Mr. Figaro Benjamin. Benjamin, sorry. They expressed that he was the captain of the boat, which we concede, and we understand that those two points, those two levels had to be added. But the five-level enhancement that he received, three for leadership and two for the aggravating role, we believe that based on that evidence. Why is it counsel read a PSR and then object to it if there's something in it that they think is incorrect that the court shouldn't rely on? Isn't it because you know implicitly that the court could obviously rely on anything that's in the PSR? Isn't that why you object to it? I objected to it. But still, we understand that the court may have, because of what transpired at the change of plea hearing, and the statement of facts at that moment, which was the day before, we understand that the court should have filed any notice that they were going to use the complete... Sure. Don't the rule say if a judge is going to anticipate doing a departure, he or she needs to give notice? But what rule are you pointing to that requires a judge to say something referred to in the PSR I might rely on or explore at sentencing? We believe that this is some sort of departure at that moment, Your Honor, what the judge did in the hearing. That's our understanding. I'm sorry. You say that the judge, in effect, did a departure? Did I understand you to say that? It seems like a departure, Your Honor, because he was supposed to be sentenced to 135 months. And that's what we requested based on whatever we analyzed the evidence is. And he received the harsher sentence of all of the defendants. But a departure means that you're just having read the guidelines or setting them aside for some reason. Well, he set them aside. He sentenced at the top of the guidelines. The sentence imposed was at the top of the guidelines range, given the drug quantity determination he made, the enhancement determination. He ended up sentencing at the very top of the guideline. Is that correct? Based on the PSI, yes. But no explanation either on sentencing. There is no explanation why he did that, why he applied the role of participation. He just applied it. He just said, this is the amount of drugs in trial that was testified, and this is the role that was testified in. But he didn't went into specifics of which was the reasoning that he had to acknowledge that what the probation office stated at that moment, which was what they read from the transcript. That's why we think that it's not proper and that proper notice should be given. No notice. If you check on the sentencing hearing transcript, there is nothing, no specifics regarding why the controlled substances, why the roles, what happened, why was he a manager, and why he sentenced. I'm still not quite understanding because the PSR laid this all out so that it gave you notice as to what recommendations were being made to the court. Like you said, you had an opportunity to object, and you did. But having objected, the court gave you an opportunity to present your version of events, and the court rejected your thinking on it. I don't see that it's any more than that. My time is up, if I may. We believe that on the Berson case, which is 941, 5th, 2nd, 8th, from the First Circuit. We believe that the court should upright the defendant so the defendant can take the steps and rebut whatever he was going to bring, the district judge was going to bring to the sentencing hearing. That is our position. We believe that a proper notice should be issued by the court because of the facts of the case, of what happened throughout everything. And this is extremely different, the position of my client, of Mr. Figaro, because he did a straight plea. He didn't go to a trial. He wasn't the leader, and he received the most of it. Thank you. Thank you. Thank you, counsel. At this time, counsel for the appellee will please introduce themselves on the record to begin. Good morning, your honors. May it please the court, Julia McIgnatis for the United States. The district court did not abuse its discretion by considering the testimony at Mr. Figaro's co-defendant's trial at his sentencing hearing. Now, this court has previously stated in a long line of cases that testimony at a co-defendant's trial can be used at sentencing and that their defendant's due process rights would not be infringed as long as they have adequate notice and a meaningful opportunity to comment on what the judge is going to rely upon. In this case, due process was fulfilled because not only did the defendant have adequate notice, for example, if a trial was presented, he filed a motion with the court requesting access to the trial transcripts stating that they were, and I quote, pertinent and relevant to sentencing. Then the PSR is authored, and in footnote three of the PSR, the probation officer explains which docket entries, which trial testimony it was relying upon when outlining the offense conduct, and then in other footnotes, explains how that testimony supports both the drug quantity determination and the leadership role in the offense. And this court in Berrios Miranda has stated by having advanced access to the PSR, which outlined in the trial testimony and the transcripts to the trial testimony, along with a meaningful opportunity to comment, which of course this defendant had since he objected both to the PSR and filed a sentencing memorandum, is all that due process requires. So in this situation, due process was ensured for this defendant. He had the opportunity to look at these transcripts and had the opportunity to object to them. And his objections were wholly rhetorical that there was no corroborating evidence.  In looking at the leadership role enhancement, what specific facts from the record are you pointing to that demonstrates his directing a person, not an object, but directing a person to do something? Yes, Your Honor. There are some instances here where there is more than one instance, which is what the case law in McKinney requires, to show that he had the supervisory and managerial role. When we look at the two trips that were taken on the Black Wolf Pack prior to the seizure that happened in January 2011, the MO is they arrive in St. Thomas, and Mr. Figaro is the individual who has the role of contacting the drug supplier, who we know is called Grandia. And he always goes away with the drug supplier. But who is he leading in contacting? No, no, no. I'm just setting the stage, Your Honor. I'm sorry. And then when he receives the multi-kilogram quantities, there was one instance where there was only 10 kilograms, and that was in the Wasikoki, when they were driving the Wasikoki, excuse me, using the Wasikoki boat. But in the Black Wolf Pack, they had higher kilogram quantities. We're talking of at least 60 kilograms per trip. And he could not manage that by himself. He could not bundle it, vacuum seal it, put the petroleum to evade detection. So he calls, and he says, I'm sending you a taxi. Come here. You need to help me clean this up. So he's directing the individuals that you have to come here. And, Your Honor, that's only just one of the non-exhaustive list of factors that are considered if someone is going to have a managerial or supervisory role. Another one is if they get a larger portion of the proceeds. And in this case, the PSR is clear that Mr. Figaro did get a larger portion. At the sentencing hearing ---- But why is that attributable to leadership as opposed to being captain? Well, I'll give you the exact reason why the facts in this case show that it was not, that that was the captain role wasn't because he got more money. If we look at the Hurricane Irma trip, which happened in September, where they were going to supposedly give relief, it was Mr. Resto, which was the co-operator, which at the sentencing hearing, Mr. Figaro stated he is a leader. Mr. Copeland and Restos are the two leaders. When they came home from that trip, Mr. Copeland and Mr. Resto and Mr. Figaro both got paid $20,000, whereas Mrs. Andino got paid $7,000. So he was getting paid the same amount as the leader and the boat captain of the Hurricane Irma trip. So being the boat captain wasn't why he got more money. If he got the same amount of money as Mr. Resto, who was the boat captain, and that's what actually caused some of the strife and Mr. Resto distancing himself from the conspiracy. And the PSR also talks about how at one point, because Mr. Resto wanted to distance himself from the conspiracy, that they were going to go change the title of the boat from Mr. Resto's name to Mr. Figaro's name. And they went to the Department of Natural Resources, but that day they didn't have all of the adequate paperwork and they were unable to do that. Counsel, I don't think it's as clearly laid out as perhaps it should be, but I do think there's the familiar procedural objection that the judge did not offer a sufficient explanation for the sentence. You've just gone through some of the detail that might support this managerial determination. What did the judge actually say about that in explaining the application, the adoption of that enhancement? What did the judge say about that? Yes, Your Honor. In the sentencing hearing, there was a big back and forth between both of the parties where the government outlined a lot of the evidence, which I relied upon right now in explaining why. And at page 20, during that back and forth, the court said he's a supervisor and he was the one who contacted, he's the one who told Catherine what to do, is at page 22. Because there's also some evidence that when the co-defendant, Catherine Martinez, wouldn't answer the phone, he would say, every time I call you, you need to answer the phone. Ms. Andino always answers the phone, which shows that he was somewhat reprimanding some of the lower rung co-conspirators on this case. However, the district court did not say that I find, he said after hearing the government, he's a supervisor, which shows that he found the government's argument in support of the role of the offense to be persuasive. And, Your Honor, I just want to clarify something that you had stated. The district court did not impose a high-end sentence in this case. The guideline range was 292 to 365, and he imposed a low guideline sentence. Thank you. And the district court explained that that sentence was based on his role in the offense and how big the drug conspiracy was. Now, it's important to note there was no specific procedural objection to, after the sentence was imposed, that there wasn't a sufficient explanation, and that's why in our briefing we claim that that specific procedural claim of error was forfeited and, therefore, should be reviewed for plain error. Now, obviously, the guideline determinations, whether he was a supervisor and the drug quantities, those were duly preserved, and that's why the government argues that there was no clear error in regards to those two questions. And if the panel has no further questions, I would rest on my brief. Thank you, counsel. Thank you, counsel. At this time, if counsel for the appellant would reintroduce himself on the record, he has a two-minute rebuttal. Once again, good morning. Edgar Sanchez for the appellant. Judge, the appeal, it went straight to the MO. MO goes to the criminal activity. It doesn't go to the role. It doesn't go to having control over an act. How do you organize and control an activity without in some way organizing and controlling the actors? Because he wasn't the one controlling. It was Mr. Copling, which already had another argument before this court. Didn't he tell Andino to sail, not fly, to St. Thomas? Yes, he did. And at some point in time, Mrs. Andino told Mr. Figaro when they were confronted by in the interdiction of the vessel, she told them, throw the telephone in the water. It's in the record. And that is something that an organizer, a leader, someone that has control over someone, wouldn't receive any instructions. If he calls someone for them to assist them. What about the direction to Catherine to always pick up the phone? That's a specific directive. That is something that an employee receiving orders would have to say to someone. On the shots here were Mr. Resto and Mr. Copling. Mr. Figaro was the captain of the boat, of course. Being the captain of the boat, you have to be aware of what's happening around. He doesn't know anything about negotiating kilos. He doesn't know anything about the amounts that were coming. And as the government stated in this moment, he received a call that there was some additional and he asked for help from the other co-defendants in this case. It's not that he's the boss. It's that he received some orders regarding it. So I believe he doesn't have control of what was happening. If they give them the phone to contact someone, calling someone doesn't make you an organizer. Calling someone makes you part of the criminal act. Thank you. Thank you. Thank you, counsel. That concludes argument in this case.